IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KRISTEN L. HAMEL,                    *

    Plaintiff,                      *

v.                                   *

                                                                        *   Civil No. 24-2134-BAH

JOHN PHELAN ET AL.,                  *

    Defendants.                     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Kristen Hamel ("Hamel") sues John Phelan ("Phelan"), in his official capacity as the Secretary of the United States Navy, and Lieutenant Commander Walther Del Orbe ("Del Orbe") (collectively "Defendants"). Hamel alleges unlawful discrimination on the basis of sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., against Phelan[1] and also brings five tort claims arising under Texas and Maryland state law against Del Orbe. *See* ECF 39 (Amended Complaint). Pending before the Court is Del Orbe's motion to be substituted by the U.S. Navy and request for Westfall Act certification. ECF 44 ("the Motion"). Del Orbe also separately filed supplemental exhibits in support of the Motion. *See* ECF 47. Hamel and Phelan filed oppositions to the Motion, ECF 48 (Phelan's) and ECF 49 (Hamel's), and Del Orbe filed a

---

[1] Hamel originally sued Terence Emmert and alleged that he "is the proper defendant for a Title VII claim because he is 'the head of the department, agency, or unit' that employed the Plaintiff when the discriminatory acts occurred." ECF 39, at 3 ¶ 7 (citing 42 U.S.C. 2000e-16(c)). However, "John Phelan became the Secretary of the Navy March 25, 2025." *Lowe v. Phelan*, No. 4:22-CV-127-FL, 2025 WL 3140796, at \*7 n.1 (E.D.N.C. Sept. 8, 2025). Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Phelan is automatically substituted as defendant in this matter in Emmert's place and the clerk is directed to amend the docket to reflect this substitution. *Id.*

reply, ECF 50. All filings include memoranda of law.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Del Orbe's Motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background

Hamel alleges that beginning in January 2023, Del Orbe became her "direct-line immediate supervisor" while Hamel was employed by the United States Department of the Navy (the "Navy"). ECF 39, at 6 ¶ 26a, at 8 ¶ 33b. Hamel was then "temporarily designated (TDY) to San An[ton]io, Texas from Monday, March 6, to Thursday March 10, 2023, to attend a cyber security conference," which Del Orbe was also attending. *Id.* ¶¶ 39, 41. Hamel alleges that while at the conference, Del Orbe began to "sexually harass" her, including "encourag[ing her] to consume alcohol with him" and "join him alone in a hot tub to consume wine at night." *Id.* at 10 ¶ 50, at 11 ¶¶ 52–53. "After a dinner gathering" on March 8, 2023, Hamel alleges that Del Orbe "abruptly grabbed [her] as she attempted to step out of the hotel elevator . . . pulled [her] back into the elevator, lunged into [her] personal space, and then sexually assaulted [Hamel] by pressing his body against [her] body" and "kiss[ing] [Hamel] twice in rapid succession." *Id.* at 12 ¶¶ 61–62. Hamel asserts that this act caused physical pain to her right shoulder and left eye,[3] and also caused "great fright, emotional distress, embarrassment, humiliation, [and] indignity." *Id.* at 12–13 ¶¶ 64–66. Later that night, Del Orbe sent Hamel several text messages asking her to join him in the hotel hot tub. *Id.* ¶ 68.

---

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] Hamel had shoulder surgery on January 6, 2023, and eye surgery on March 2, 2023, and alleges that the assault exacerbated these injuries. ECF 39, at 8 ¶ 35, at 9 ¶ 42.

Hamel filed a formal complaint of sex discrimination on May 19, 2023, which an "independent contractor" began investigating on July 17, 2023. *Id.* at 5 ¶¶ 18, 20. Hamel alleges that on July 22, 2024, Del Orbe sent her a LinkedIn message stating, "F[---]ing liar.......hope you made peace with god and he can forgive you." *Id.* at 14 ¶ 73. The evidence submitted by Del Orbe shows that he was reprimanded by the Navy for violating the Uniform Code of Military Justice ("UCMJ") by committing "assault consummated by a battery" and engaging "conduct unbecoming an officer and a gentleman." ECF 47-4, at 1. These violations were supported by a finding that Del Orbe had engaged in "unwanted sexual contact, sexual harassment, and assault" against Hamel. *Id.*

### B. Procedural Background

Hamel filed her original complaint in this Court on July 23, 2024. ECF 1. Del Orbe filed a motion to dismiss the original complaint and a request for certification under the Westfall Act, ECF 29, which Phelan and Hamel opposed, ECF 32 (Phelan) and ECF 34 (Hamel). Attached to Phelan's opposition is the U.S. Attorney's declination to certify Del Orbe's acts as within the scope of his employment under the Westfall Act. *See* ECF 32-1. Hamel then filed a motion for leave to file an amended complaint. ECF 33. Phelan consented to the motion, and Del Orbe did not respond, so the motion was granted and Del Orbe's motion to dismiss denied as moot. *See* ECF 38. The amended complaint was docketed on June 5, 2025, ECF 39, to which Phelan and Del Orbe filed their respective answers, ECF 40 (Phelan) and ECF 43 (Del Orbe). Del Orbe then filed the instant Motion, which is now ripe for review.

3

## II.    LEGAL STANDARD

The Westfall Act, which amended the Federal Tort Claims Act ("FTCA"),[4] "immunizes federal employees from personal liability for claims that arise within the scope of their employment." *Doe v. Meron*, 929 F.3d 153, 160 (4th Cir. 2019) (citing *Maron v. United States*, 126 F.3d 317, 321 (4th Cir. 1997)); *see also Osborn v. Haley*, 549 U.S. 225, 229 (2007) ("The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."). Under the FTCA, the United States "*shall* defend any civil action or proceeding brought in any court against any employee of the Government . . . for any such damage or injury." 28 U.S.C. § 2679(c) (emphasis added). "When a federal employee is sued, the United States Attorney, acting on behalf of the Attorney General, must certify whether that employee was in fact acting within the scope of his or her employment at the time of the alleged tortious act." *Maron*, 126 F.3d at 321 (citing 28 U.S.C. § 2679(d)(1)). "The Attorney General's certification is conclusive unless challenged." *Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1153 (4th Cir. 1997) (citing *Billings v. United States*, 57 F.3d 797, 800 (9th Cir. 1995)). Where, as here, the Attorney General declines to certify that an employee was acting within the scope of their employment, the Court has the authority to review the certification decision. 28 U.S.C. § 2679(d)(3) ("In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time

---

[4] Absent a statutory waiver, the United States is shielded by sovereign immunity from suit for a civil tort. *See Kerns v. United States*, 585 F.3d 187, 193–94 (4th Cir. 2009). The FTCA provides a limited waiver of the sovereign immunity of the United States, allowing a plaintiff to sue the United States for "monetary damages in compensation for injuries resulting from certain torts by 'any employee of the Government' acting within the scope of employment." *Harris-Reese v. United States*, 615 F. Supp. 3d 336, 361 (D. Md. 2022) (quoting 28 U.S.C. § 1346(b)).

4

before trial petition the court to find and certify that the employee was acting within the scope of his office or employment."); *see also De Martinez v. Lamagno*, 515 U.S. 417, 420 (1995) (holding that "the scope-of-employment certification is reviewable in court"). In such cases, the Court reviews the certification determination de novo, and the party challenging the Attorney General's certification bears the burden of proof by a preponderance of the evidence. *Maron*, 126 F.3d at 322–23; *see also Feldheim v. Turner*, 743 F. Supp. 2d 551, 556 (E.D. Va. 2010) (finding that, where a defendant employee challenges the Attorney General's denial of certification, "the legal standard and burden of persuasion" is the same as where a plaintiff challenges the Attorney General's grant of certification). To carry this burden, the movant "must submit 'specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation.'" *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000) (quoting *Gutierrez de Martinez*, 111 F.3d at 1155).

"[L]imited discovery should sometimes be permitted to resolve factual disputes concerning the scope-of-employment issue." *Childress v. United States*, No. 3:07-CV-03312, 2008 WL 6716458, at *2 (D.S.C. Mar. 13, 2008) (citing *Borneman*, 213 F.3d at 827). However, a court need not allow limited discovery unless the movant "has made allegations sufficient to rebut the Government's certification." *Brodnik v. Lanham*, No. CIV.A. 1:11-0178, 2014 WL 3401115, at *2 (S.D.W. Va. July 10, 2014) (quoting *Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir. 2009)). Accordingly, "[o]nly if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing." *Gutierrez de Martinez*, 111 F.3d at 1155.

### III. ANALYSIS

Hamel brings three tort claims against Del Orbe under Texas law, including physical assault causing bodily injury (Count 3), offensive assault (Count 4), and false imprisonment (Count

5), as well as claims of intentional infliction of emotional distress ("IIED") under both Texas and Maryland law (Counts 6 and 7). *See* ECF 39, at 20–25. Since the United States Attorney declined to certify that Del Orbe was acting within the scope of his employment when the allegedly wrongful conduct took place, *see* ECF 32-1, at 1, Del Orbe challenges the certification decision and moves to substitute the United States in his place as a defendant. ECF 44, at 1. In the alternative, Del Orbe requests that the Court "permit discovery . . . and a factual hearing on this issue." *Id.* at 3. Both Hamel and Phelan argue that the certification should stand. *See* ECF 48 (Phelan's opposition); ECF 49 (Hamel's opposition).

As noted, Del Orbe bears the burden of proving by a preponderance of the evidence that he was acting within the scope of his employment. Whether a federal employee's action falls within the scope of their employment under the Westfall Act must "be determined according to the rules of respondeat superior of the state in which the wrongful conduct occurred." *Jamison v. Wiley*, 14 F.3d 222, 237 (4th Cir. 1994) (citing *Johnson v. Carter*, 983 F.2d 1316, 1322 (4th Cir. 1993)); *see also Alessa v. Phelan*, Civ. No. DLB-21-0924, 2025 WL 1019808, at *4 (D. Md. Apr. 3, 2025) (citing *U.S. Tobacco Coop. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 249 (4th Cir. 2018)). Since the alleged conduct giving rise to this action occurred in Texas and Maryland, those states' respondeat superior rules govern the scope-of-employment determination.

Del Orbe argues that the complaint, standing alone, demonstrates that he was acting within the scope of his employment in Texas because he "was (i) an Active Duty Lieutenant Commander of the United States Navy, who was (ii) assigned to base Pearl Harbor Hickam Annex, Hawaii under military orders; (iii) and traveled on military orders to Austin Texas on March 6-9, 2023, for a military TDY training (iv) in which the Plaintiff was also assigned and worked at the same event and received training at the same event as Defendant." ECF 44-1, at 2–3. Del Orbe also asserts

that the alleged conduct was within the scope of his employment because it "occurred and transpired during duty hours, while on TDY, and at the location of the assigned training, and the hotel installations in which [Del Orbe] was escorting the Plaintiff." *Id.* at 3. Del Orbe offers in a footnote that "numerous other factors [ ] show and prove" that he was acting within the scope of his employment, including "his (1) appointment as an Officer of the United States Navy, (2) his receipt of formal orders to travel TDY to Texas with Plaintiff; (3) his payment of official salary during the TDY as well as TDY payment of travel expenses; (4) his provision of a military credit card by the United States Navy for use during his travel; (5) the imposition of non-judicial punishment based on administrative complaint filed by Plaintiff with the Navy; (6) and the absence of a courts-martial." *Id.* at 3 n.1. Del Orbe also separately filed five exhibits in support of his motion, including an affidavit, an "LCDR Commissioning Oath Appointment," a "Request and Authorization for TDY travel" to Texas, an "NJP Punitive Letter of Reprimand," and a "Fitness Report and Counseling Record." *See* ECF 47-1–47-5.

Phelan argues that scope of employment is defined by "the *conduct* at issue," and that Del Orbe's assertions regarding "the time (duty hours) and location (training center and hotel)" of the alleged acts fail to establish that "his *conduct* was within the scope of his employment." ECF 48, at 4 (emphasis in original). Hamel argues that Del Orbe's acts "were the product of Del Orbe's personal interest and completely unrelated to the business objectives of the Department of the Navy." ECF 49, at 6. Del Orbe counters that "the dispositive fact" for certification "is not whether the United States Government employee committed an alleged sexual act or misconduct, but rather whether he/she was committing said act in the course of his or her employment." ECF 44-1, at 3 (citing *Cholewa v. United States*, No. 23-1278, 2024 WL 869550 (6th Cir. Feb. 29, 2024)). Even if Del Orbe's characterization of the governing law is accurate, it is his burden to "submit specific

7

evidence or the forecast of specific evidence that contradicts the [U.S. Attorney's] certification decision," and Del Orbe fails to do so here. *See Borneman*, 213 F.3d at 827 (internal quotation marks and citation omitted).

Del Orbe fails to bring forth facts to rebut the U.S. Attorney's certification decision and show that his conduct in Texas was within the scope of his employment. Del Orbe's affidavit asserts that he and Hamel shared "[a] cordial, consensual hug [in the elevator] on March 9, 2023,"[5] and that he extended to Hamel "[a]n invitation to the hotel's public hot tub, which she politely declined." ECF 47-1, at 2. The punitive letter of reprimand, submitted by Del Orbe as supporting evidence, reflects that Del Orbe "offered that [he] did not kiss [Hamel], but that [he] did bring her into an embrace without her consent." ECF 47-4, at 1. The letter also states that Del Orbe "acknowledged that on multiple occasions, he invited [Hamel] to join [him] in the hotel hot tub and encouraged her to attend one-on-one dinners, events, or activities, often oriented around alcohol," and that "[t]ext message evidence and witness statements . . . confirmed these facts." *Id.* Accordingly, Del Orbe was found to have violated the UCMJ for assault consummated by a battery and conduct unbecoming an officer and a gentleman. *Id.*

The Court observes that Del Orbe's recounting of the facts differs from Hamel's. However, Del Orbe does not explain how a finding that the events in question unfolded as he alleges they did supports the conclusion that his acts were within the scope of his employment under Texas law. Under Texas law, an employee acts within the scope of his employment when the conduct at issue: "(1) falls within the scope of the employee's general authority and was (2) committed in

---

[5] The Court notes that the amended complaint and Del Orbe's affidavit identify different dates on which the alleged conduct in the elevator occurred. *Compare* ECF 39, at 12 (alleging on "March 8, 2023," Del Orbe "abruptly grabbed the Plaintiff as she attempted to step out of the hotel elevator"), *with* ECF 47-1, at 2 ("A cordial, consensual hug on March 9, 2023."). However, both parties appear to be discussing the same alleged event, and neither contends otherwise.

8

furtherance of the employer's business (3) for the accomplishment of the object for which the employee was hired." *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 517–18 (W.D. Tex. 2020) (internal quotation marks omitted) (quoting *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 576 (Tex. 2002)). "By contrast, 'if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.'" *Id.* Additionally, in Texas, "[i]ntentional torts, including assault, against another employee are not ordinarily within the scope of an employee's authority, but are most often the expression of personal animosity.'" *Soto v. El Paso Natural Gas Co.*, 942 S.W. 2d 671, 680 (Tex. App. 1997).

Seemingly in support of the first of these elements, Del Orbe asserts that "a naval officer, while on active service 'is at all times subject to naval authority' and 'may . . . exercise authority over all persons who are subordinate to [him].'" ECF 50, at 4 (quoting 32 C.F.R. § 700.811(a)) (alteration in ECF 50). But Del Orbe's status as an active-duty naval officer does not automatically transform all of his conduct into acts within the scope of his employment. *Cf. Hallett v. United States*, 877 F. Supp. 1423, 1428 (D. Nev. 1995) ("A military servicemember may be on active duty, not on leave, and still not acting within the scope of employment."). Indeed, courts have found military officers to be acting outside of the scope of their employment, even when on active duty. *See, e.g., Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 612 (D. Md. 2011) (affirming that an active duty servicemember who shot the plaintiff was not acting within the scope of his employment at the time of the shooting, which occurred on private property while the servicemember was off-duty); *Linke v. United States*, No. W-14-CV-444, 2015 WL 12743611, at *3–4 (W.D. Tex. Mar. 31, 2015) (finding a military police officer acted outside of the scope of his employment when he committed sexual assault, even though he was on duty and in uniform when

9

the assault occurred). Indeed, "[b]ecause personal gratification motivates sexual misconduct—instead of serving the employer—courts have held that these acts are not within the scope of employment." *Linke*, 2015 WL 12743611, at *3 (collecting cases).

Del Orbe does not explain why his active-duty status would render his alleged conduct at the conference within the scope of his general authority as an employee of the Navy. *See Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d at 517–18. Del Orbe likewise does not assert any facts that show his alleged conduct was "committed in furtherance of the [Navy]'s business" or "for the accomplishment of the object for which [he] was hired." *Id.* Hamel's allegation that Del Orbe committed intentional torts also supports the conclusion that Del Orbe's conduct was outside of the scope of his employment under Texas law. *See Soto*, 942 S.W. 2d at 681. As such, the differing version of events offered by Del Orbe regarding his conduct in Texas do not persuade the Court to overturn the certification denial.

Other facts offered by Del Orbe do not create a genuine issue of fact on the scope of employment question. Del Orbe submits that his conduct was within the scope of his employment because he was present at the conference in Texas under military orders. *See* ECF 44-1, at 3. He also contends that he was paid an "official salary during the TDY" and had a "military credit card by the United States Navy for use during his travel," *id.* at 3 n.1, and offers exhibits in support of this, *see* ECF 47-2–47-3. The parties, however, do not dispute that Del Orbe was employed by the Navy and was on TDY while he attended the conference in Texas with Hamel. *See* ECF 48, at 4; ECF 49, at 2. Del Orbe also does not explain how payment of an official salary or use of a military credit card during travel bears on the scope of employment issue, and the Court cannot discern how either fact is relevant under Texas law. In Texas, a "scope of employment issue is not determined by the payment of wages." *Williams v. Chatman*, 17 S.W.3d 694, 698 (Tex. App.

10

1999) (citing *Doe v. Boys Clubs of Greater Dallas,* 868 S.W.2d 942, 948–49 (Tex. App. Amarillo, 1994)). These facts offered by Del Orbe concern the payment of his wages and travel reimbursement and are, therefore, unrelated to whether his alleged conduct was within the scope of his employment.

Del Orbe also raises that the Navy imposed "non-judicial punishment based on [Hamel's] administrative complaint" and notes "the absence of a courts-martial" for the alleged conduct. ECF 44-1, at 3 n.1, *see* ECF 47-4–47-5. This is similarly not disputed by the parties. *See* ECF 49, at 3–4 (Hamel detailing the Navy's investigation of and penalty for Del Orbe's conduct). Del Orbe again does not explain how these undisputed facts impact the Court's analysis of the scope of employment question under Texas law.

As to Hamel's claim under Maryland law, Del Orbe similarly does not provide any facts or argument asserting that his alleged conduct in Maryland, i.e., sending a harassing message over LinkedIn, was within the scope of his employment. ECF 50, at 4–6. Under Maryland law, Del Orbe was acting within the scope of his employment if (1) he was acting in furtherance of the Navy's business and (2) his actions were authorized by the Navy. *See Sawyer v. Humphries,* 587 A.2d 467, 470 (Md. 1991). Del Orbe does not argue that the message he allegedly sent was in furtherance of the Navy's business or authorized by the Navy. In fact, Del Orbe does not address the LinkedIn message at all. Instead, Del Orbe merely recites Maryland respondeat superior law in his reply brief, including the "criteria . . . to determine the existence of an employer-employee relationship in Maryland," ECF 50, at 5, which does not appear relevant to the scope of employment issue here since no party disputes that Del Orbe was an employee of the Navy at the time the message was sent. Del Orbe again fails to "present[] persuasive evidence refuting certification." *See Maron,* 126 F.3d at 323.

11

Del Orbe asserts that he could prove at an evidentiary hearing that "he acted at all times relevant to the facts alleged . . . within the scope of his employment and with no malicious or ill will toward Plaintiff Hamel." ECF 50, at 6. But even if this were the case, Del Orbe has not raised any "genuine question of fact material to the scope-of-employment issue" to warrant "discovery and an evidentiary hearing." *Brodnik*, 2014 WL 3401115, at *2 (quoting *Gutierrez de Martinez*, 111 F.3d at 1148); *Armstrong v. Thompson*, 759 F. Supp. 2d 89, 96–97 (D.D.C. 2011) ("[T]o obtain discovery for the purpose of attempting to rebut the denial of a Westfall certification, a defendant must allege sufficient facts that, taken as true, would establish that the actions for which the defendant is seeking immunity from common law tort did not exceed the scope of the defendant's employment."). Moreover, Del Orbe does not identify what facts, if discovered, would lead to a viable theory that he was acting within the scope of his employment. *See Davric Maine Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 68 (1st Cir. 2001) ("In order for discovery of immunity-related facts to be warranted, the [movant] must indicate what sort of facts he or she hopes to discover that would create a material factual dispute and could support a viable theory" regarding the scope of employment issue). The Court declines to afford Del Orbe limited discovery or an evidentiary hearing on this issue because he has failed to raise any genuine issue of fact that his conduct fell within the scope of his employment under Texas or Maryland law.

Del Orbe has failed to bear his burden to rebut the U.S. Attorney's certification. Accordingly, the certification decision stands, and Del Orbe will remain the defendant to Hamel's claims in Counts 3 through 7.

## IV. CONCLUSION

For the foregoing reasons, Del Orbe's motion to be substituted by the U.S. Navy and request for Westfall Act certification, ECF 44, is **DENIED**.

A separate implementing order will issue.

Dated: January 12, 2026

/s/
Brendan A. Hurson
United States District Judge